# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 22, 2010 Session

## CLARENCE E. MILLER v. MARIAN N. MILLER

**Appeal from the Chancery Court for Anderson County**
**No. 08CH8438     William E. Lantrip, Chancellor**

---

### No. E2010-00492-COA-R3-CV - FILED NOVEMBER 9, 2010

---

Husband filed for divorce after twenty-five years of marriage alleging inappropriate marital conduct as grounds for divorce. Wife filed a counter-claim for divorce also alleging inappropriate marital conduct. After a bench trial, the court found that the parties had lived separately for at least 10 years; awarded a divorce to Husband; and awarded alimony in futuro to Wife. Wife appeals challenging the trial court's award of a divorce to Husband, the division of the marital property, and the award of alimony. Upon review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Daniel Kidd, Knoxville, Tennessee, for the appellant, Marian N. Miller.

Jodi Loden, Clinton, Tennessee, for the appellee, Clarence E. Miller.

## OPINION

### I.  FACTUAL BACKGROUND

Clarence E. Miller ("Husband") married Marian N. Miller ("Wife") in 1984. At the time of the marriage, Husband was 61 and a retired employee from Union Carbide and the Navy National Guard, and Wife was 50 and she worked various jobs as a nurse and security guard throughout the marriage.

Husband owned a home located at 122 Valley Lane, Clinton, Tennessee, during the

marriage. In 1997, Wife inherited a house located at 311 Murray Drive, Knoxville, Tennessee. At trial, there was testimony that the parties had lived separately for at least 10 to 12 years.

Late in the marriage, Husband initiated various cases for his exposure to asbestos and other carcinogens during his employment with the Navy and the Department of Energy. Husband applied for benefits under the Department of Energy Employee Occupational Illness Compensation Program (EEOICP); filed two workers' compensation claims; and filed a joint claim in a class action lawsuit against asbestos manufacturers. Wife was named as a party on the class action lawsuit concerning the asbestos litigation. Periodically, settlement checks from the asbestos litigation were tendered in both Husband's and Wife's names. In April 2008, Husband's EEOICP claim was approved and he received $150,000 as a settlement.

Shortly after receiving the EEOICP settlement, Husband filed a complaint for divorce against Wife alleging inappropriate marital conduct. Wife responded by filing a counter-claim for divorce, a motion for a restraining order to prevent Husband from dissipating the EEOICP settlement and proceeds from the workers' compensation claims, and a motion for pendente lite alimony. The trial court granted the restraining order concerning the proceeds from the workers' compensation claims and denied the restraining order regarding the EEOICP settlement.

During the divorce litigation, there was controversy concerning the scheduling of the motion for temporary alimony. Wife's counsel claims that he scheduled the hearing for the motion and sent notice of the date to Husband's counsel after opposing counsel failed to respond to his letter. In the letter, Wife's counsel asked for opposing counsel's availability for a hearing date. Husband's counsel eventually responded, albeit late, and Wife's counsel never replied to her available dates. The Chancellor's secretary eventually called Wife's counsel and urged him to talk with opposing counsel to decide upon a mutually agreeable date. After failing to come to an agreeable date, the Chancellor's secretary called and informed Wife's counsel that the hearing was removed from the docket per the Chancellor's order. This incident prompted Wife's counsel to file a motion for recusal claiming that the Chancellor could not be an impartial adjudicator. After a hearing on the motion for recusal, the trial court denied the motion.

Thereafter, the motion for temporary alimony was heard and the trial court awarded $200 per month in temporary alimony to Wife. After an unsuccessful attempt at mediation, a bench trial began on November 9, 2009. At trial, the parties disputed the classification of the EEOICP settlement as Husband's separate property and whether the parties lived separately for at least 10 years. The trial court eventually awarded a divorce to Husband; divided the marital property, permitting Husband to keep the settlements related to his

injuries; and awarded $250 per month in alimony in futuro to Wife. This appeal followed.

## II. ISSUES

Wife raises the following issues for review, which we restate:

1. Whether the trial court erred in denying Wife's motion for recusal.

2. Whether the trial court erred in awarding a divorce to Husband.

3. Whether the division of the marital property was equitable.

4. Whether the trial court erred in determining the award of alimony to Wife.

## III. STANDARD OF REVIEW

On appeal, we review the decision of a trial court sitting without a jury de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. DISCUSSION

Motion for Recusal

Wife contends that the trial court should have granted her motion for recusal because there was a reasonable basis to question the trial court's impartiality. Wife claims that the Chancellor's secretary acted improperly when setting the date for a hearing concerning alimony and acted as intermediary for Husband's counsel. Wife's counsel attempted to set the hearing for alimony by giving notice to opposing counsel. Initially, Wife's counsel sent a letter to Husband's counsel in an attempt to schedule the hearing by agreement. After Wife's counsel did not receive a reply from Husband's counsel, he set the hearing and sent notice of the hearing to Husband's counsel. Huband's counsel objected because she did respond to the request via email, and she informed the Chancellor's secretary of the problem. At the hearing, the trial court found that Wife's counsel had a "dispute" with his scheduler and opposing counsel and that did not warrant recusal.

Under Supreme Court Rule 10, Canon 3(E)(1), "[a] judge shall disqualify himself or

herself in a proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3 E(1). A trial court should grant a recusal motion when "the judge has any doubt as to his or her ability to preside impartially in the case" or " 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.' " *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Therefore, even if a judge believes that he or she can be fair and impartial, the judge should grant the motion for recusal when " 'the judge's impartiality might be reasonably questioned' " because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)); *see also Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009).

It is within the trial judge's discretion to grant a motion for recusal. *Bd. of Prof'l Responsiblity of Sup. Ct. of Tenn. v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004). We will not reverse such a decision "unless a clear abuse appears on the face of the record." *Davis*, 38 S.W.3d at 564. A trial court abuses its discretion when it applies "an incorrect legal standard" or reaches "a decision which is illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

Having carefully reviewed the record, it does not appear that there was a reasonable basis to question the Chancellor's impartiality. Wife's counsel's dispute concerning the scheduling of the motion and how the Chancellor applied the local rules of practice does not create an appearance of bias. We fail to find any abuse of discretion in the trial court's decision to deny the motion for recusal.

Divorce

Wife challenges the trial court's award of a divorce to Husband. She claims there was ample evidence to support a finding that Husband engaged in inappropriate marital conduct; Wife contends that the trial court should have granted a divorce to her or to both parties.

In Tennessee, grounds for divorce and defenses thereto are statutory. *Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977). Tenn. Code Ann. § 36-4-101 (1) - (15) (2010) provides the grounds for divorce. The ground at issue in this case is inappropriate marital conduct, which Tenn. Code Ann. § 36-4-101(11) defines as:

> The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper, which may also be referred to in pleadings as inappropriate marital conduct[.]

Therefore, inappropriate marital conduct is established when "either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish, or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.' " *Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002)). Under Tenn. Code Ann. § 36-4-129(b), the trial court holds the discretion to grant a divorce to the party who was less at fault.

In the case at bar, both Husband and Wife asserted that the other party was guilty of inappropriate marital conduct. At trial, Wife testified that Husband engaged in inappropriate conduct with two other women. She also rebuffed Husband's testimony that the couple lived separately for such an extended period of time. She testified:

> I lived with my husband until I was served divorce papers, the whole 25 years. It's preposterous to hear what I'm hearing over there. We have been from the east coast to the west coast.

Nevertheless, Wife's testimony was rebutted by her employment records listing her separate residence as her address and the testimony of her neighbor, John Carpenter. Mr. Carpenter testified that he lived on the property adjoining Wife's property for 23 years and that he consistently saw her and her car in the driveway for the past 10 years. As a result, the trial court found that Wife's testimony concerning Husband's inappropriate conduct with other women was unsupported by the evidence and that it constituted grounds for divorce because Wife falsely accused Husband. Further, the trial court found by Wife's own admission, Wife took and pawned one of Husband's gun. These findings coupled with the parties' separate living arrangement amounted to inappropriate marital conduct by Wife and warranted the award of a divorce to Husband.

Whether a party should be awarded a divorce on grounds of inappropriate marital conduct is usually determined by a trial court's assessment of witness credibility. *Chaffin*, 211 S.W.3d at 289. "In a case where the resolution of the issues depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues." *Fann v. Fann*, No. W2000-02431-COA-R3-CV, 2001 WL 394858, at *2 (Tenn. Ct. App. W.S., Apr. 18, 2001). Affording deference to the trial court's assessment of the witnesses' credibility, we find that there is enough evidence in the record to support the trial court's findings and affirm the decision to award the divorce to Husband.

Division of the Marital Property

Wife takes issue with the trial court's division of the marital estate. Wife argues that the trial court awarded her far less than Husband, and she claims the trial court should have given greater weight to the factors listed in Tenn. Code Ann. § 36-4-121(c).

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. *See generally* Tenn. Code Ann. § 36-4-121(a)(1) (2010); *see Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Separate property is not subject to division. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division. *See Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

In the instant case, the trial court found that the parties had lived separately for about 10 to 12 years prior to the Husband's filing for divorce and that the parties maintained separate finances throughout that period of time. Due to the parties living separate lives for such an extended period of time, the trial court awarded each party the property in his or her possession at the time of the division. The trial court awarded and classified the following as Husband's separate property: (1) the home and property located at 122 Valley Lane, Clinton, Tennessee; (2) the EEOICPA compensation award; (3) the two workers' compensation claims; and (4) the asbestos lawsuit settlement award. The trial court awarded and classified the following as Wife's separate property: (1) the home and property located at 311 Murray Drive, Knoxville, Tennessee; and (2) the property located in Wartburg, Tennessee. The trial court justified classifying the various monetary settlement awards as Husband's separate property because those claims and related injuries arose prior to the marriage. Even though Wife's name appeared as a party to the asbestos lawsuit, the trial court found that it was a claim "based upon personal injuries that [Husband incurred] during his Navy career and his employment at Union Carbide." In dividing the marital estate, the trial court also noted the difference in the relative debts the parties stipulated. In the parties' joint stipulations on real estate and assets, Husband assumed responsibility for a combined credit card debt of approximately $17,737.34 that was incurred during the marriage. Wife assumed a credit card debt of approximately $115, a home equity loan on her home with a balance of approximately $44,000, and a personal loan in the amount of $1,500.

This court will not disturb the trial court's division of the marital estate "unless the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements or procedures." *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990); *see also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn.

Ct. App. 2001) (explaining that the appellate courts "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence."). Therefore, "a trial court's division of the marital estate is entitled to great weight on appeal and should be presumed to be proper unless the evidence preponderates otherwise." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (citations omitted).

Contrary to the Wife's contentions, the factors of Tenn. Code Ann. § 36-4-121(c) guided the trial court's distribution of the marital estate. Specifically, the trial court considered the value of each party's separate property, *see* Tenn. Code Ann. § 36-4-121(c)(6) and the economic circumstances of each party, *see* Tenn. Code Ann. § 36-4-121(c)(8). Because Husband's entitlement to those monetary settlements arose prior to the marriage, *see* Tenn. Code Ann. § 36-4-121(b)(2)(A)[1] and constitute awards for future medical expenses and pain and suffering, *see* Tenn. Code Ann. § 36-4-121(b)(2)(E), the trial court properly classified and awarded such property to Husband. Having reviewed the record, we do not find that the evidence preponderates against the trial court's division of the marital estate. Accordingly, we affirm.

Alimony

Wife contends that the trial court should have awarded a lump sum of alimony or alimony in solido to her based on the allocation of the parties' marital debts and the division of marital property. Specifically, Wife contends that the trial court did not consider her need when awarding alimony, and she argues that at the very least, the alimony should terminate at her death and not upon Husband's death.

---

[1]Tenn. Code Ann. § 36-4-121(b)(2) (2010) defines "separate property" as:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, compiled in 26 U.S.C., as amended;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tennessee law recognizes several separate classes of alimony or spousal support. *See* Tenn. Code Ann. § 36-5-121(d)(1) (2010); *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). The decision to award alimony is within the discretion of the trial court. *Id.* at 456-57. The unique circumstances of each case guide the decision to award alimony, and the need of the recipient spouse and the obligor spouse's ability to pay are the two most important considerations. *Robertson*, 76 S.W.3d at 342. After the trial court determines that spousal support is appropriate, the court then weighs the relevant statutory factors in Tenn. Code Ann. § 36-5-121(i) in determining the nature, amount, and period of time of the award.[2] We review a trial court's award of alimony under the abuse of discretion standard. *See Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). This court will not substitute its judgment for that of the trial court simply because we may have chosen a different alternative when a discretionary decision falls within a range of acceptable alternatives. *E.g., Gleaves*

---

[2]Tenn. Code Ann. § 36-5-121(i) (2010) provides the following relevant factors for a court to consider:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

*v. Gleaves*, No. M2007-01820-COA-R3-CV, 2008 WL 4922533, at *7 (Tenn. Ct. App. M.S., Nov. 13, 2008) (citations omitted).

In this case, we do not find that the trial court abused its discretion in its award of alimony to Wife. In the final divorce decree, the trial court considered both Wife's need for further support and Husband's ability to pay. Specifically, regarding Wife's need and the relevant statutory factors, the trial court found:

> In going over the question of alimony, the Court notes that this has been a marriage, even though it may have been an unusual marriage, it has been a marriage of 25 years. The nature of their relationship, and especially the defacto separation between the parties since the late 1990s, Mrs. Miller's [Wife's] work history and her need for assistance, her age and her testimony considering her physical condition. . .[.]

After noting the circumstances of this case, the trial court awarded alimony in futuro in the amount of $250 per month. Wife contends that this award is not enough; she argues that she is entitled to more due to her monthly needs and Husband has the ability to pay because of his available cash assets totaling $88,000. Nonetheless, as this court has previously observed, "[l]ong-term spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs*, 250 S.W.3d at 456, f.n. 2 (supporting citations omitted). Here, the trial court's determination concerning the type and amount of the alimony award was based on the relevant statutory factors and the facts of this case. From our review of the record, we do not find a clear abuse of discretion and affirm the award of alimony in futuro to Wife.

## V. CONCLUSION

The judgment of the trial court is affirmed in its entirety. Costs of this appeal are taxed to the appellant, Marian N. Miller. This cause is remanded, pursuant to applicable law, for the collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE